```
             IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MARYLAND
                                     :
UNIVERSITY GARDENS APARTMENTS
JOINT VENTURE, et al.                :

     v.                              :  Civil Action No. DKC 2005-0788

                                     :
JACK B. JOHNSON, COUNTY
EXECUTIVE, PRINCE GEORGE'S           :
COUNTY, MARYLAND, et al.
                                     :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) filed by Defendants Prince George's County Executive Jack B. Johnson and Prince George's County. The issues have been briefed fully and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendants' motion to dismiss will be granted. Count 1 will be dismissed with prejudice, but Counts 2, 3 and 4 will be dismissed without prejudice.

**I.   Background**

University Gardens Apartments Joint Venture, Penn Southern Apartments Joint Venture, and Hampshire Village Apartments Joint Venture (collectively, "Plaintiffs") are all Maryland general partnerships engaged in the ownership and operation of three multifamily residential apartment properties located within Prince George's County. Plaintiffs allege the following facts. In 1988, the Apartment and Office Building Association ("AOBA"), a trade association, met with the former County Executive and Prince

George's County ("County") to deal with increasing criminal activity in and around multifamily residential communities throughout the County.  They reached an agreement that called for increasing the bi-annual apartment licensing fees by twenty-five dollars per apartment unit in order to fund additional police officers who would be assigned to patrol multifamily units.  The agreement would provide one hundred full-time sworn police officers, over and above the standard number of police officers provided by the County.

As a result of the agreement, the County Council passed emergency legislation to increase these licensing fees.  Despite the twenty-five dollar increase, neither the County Executive nor the County increased the number of police officers assigned to patrol multifamily units in the County.  Plaintiffs and other property owners have made repeated requests to uphold the agreement, however, the County Executive and the County have failed to provide adequate police protection to residents of multifamily properties.  Plaintiffs further allege that, since 1988, Defendants or their predecessors have not increased the standard number of officers patrolling throughout the County, despite a rise in crime.

Beginning in mid-January 2005, County Executive Jack B. Johnson began issuing press releases on the County's website and making speeches in which he claimed that the rise in crime in the County was due, in part, to the failures of Plaintiffs and those

similarly situated to Plaintiffs. At some point, Mr. Johnson and the County Police Chief compiled the "Apartment Action List" of the County's "most crime ridden apartment complexes" based on 2004 crime statistics. Twenty apartment complexes, including University Gardens Apartments and Hampshire Village Apartments, were identified on the list.[1] Mr. Johnson disclosed the list on March 15, 2005, during a press conference, and he stated in a press release posted on the County's website that one out of every 20 calls for police service came from these properties. Plaintiffs dispute Mr. Johnson's claim that he notified the apartment owners on the list, including Plaintiffs, before making his announcements. In addition, during a March 9, 2005, speech, Mr. Johnson indicated that he was prepared to use the power of eminent domain to tear down complexes that contribute to the County's crime problems.

Plaintiffs assert that the statements Mr. Johnson made at the press conferences and in press releases published on the County's website are untrue. Plaintiffs state that Mr. Johnson did not verify that the calls attributed to Plaintiffs' properties had in fact come from those properties, nor did he identify the nature of those calls, such as whether the calls were related to crime. With respect to Penn Southern Apartments, Plaintiffs assert that the apartments are located in a low-crime area and account for a minimal volume of calls. Plaintiffs maintain they were damaged as

---

[1] Penn Southern Apartments was not on the list.

3

a result of Mr. Johnson's statements because potential tenants would not execute leases with Plaintiffs, the value of Plaintiffs' properties was reduced, and their creditor relationships were impaired.  They also state that "Defendants seek to shift the responsibility of protecting the public from the Police Department to the property owners" (paper 1, ¶ 36), and this shift is contrary to the laws of the state of Maryland and the County's Code and Charter.

Plaintiffs filed a lawsuit March 24, 2005, asserting the following Counts: (1) civil rights violation pursuant to 42 U.S.C. § 1983, (2) intentional interference with business relations, and (3) breach of contract.[2]  In Count 4, Plaintiffs also seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring:

> a. That the actions of the Defendants constitutes [sic] a violation of the laws of the State of Maryland and the County;
>
> b. That the agreements of the County with the Plaintiffs and others by failing to provide adequate numbers of appropriate law enforcement officers so to provide for the safety and security of those who reside in multiple residential dwelling units owned by the Plaintiffs.[3]

---

[2] Plaintiffs state expressly that they are bringing Counts 1 and 2 against both Mr. Johnson and the County.  Plaintiffs do not state whether they are bringing Count 3 against both Defendants.

[3] Plaintiffs appear to be asking for a declaratory judgment that the County violated its agreement with Plaintiffs and others to provide additional police officers.

4

(Paper 1, at ¶ 69).  Plaintiffs also request an injunction, pursuant to Fed.R.Civ.P. 65, enjoining Defendants from making additional defamatory statements about Plaintiffs and compelling the County to meet its staffing requirements.

Defendants have filed a motion to dismiss asserting a variety of arguments.  On Count 1, Defendants argue that Plaintiffs have failed to state a § 1983 due process claim.  On Count 2, Defendants assert that the County possesses governmental immunity, Mr. Johnson is entitled to statutory immunity, and Plaintiffs have failed to state a claim.  On Count 3, Defendants aver that they have not waived immunity and any alleged breach of contract is beyond the statute of limitations.  Finally, with respect to the request for declaratory judgment and an injunction in Count 4, Defendants assert that Plaintiffs' complaint presents a non-justiciable political question.

**II.  Standard of Review**

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Accordingly, a 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified

5

pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court must disregard the contrary allegations of the opposing party. *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**III. Count 1: § 1983 Due Process**

Plaintiffs allege a § 1983 violation by claiming that they have "protected property interests ... in their business relations, the value of their property and to be free of stigma imposed by the government which affects and diminishes Plaintiffs' property value and business relations." (Paper 1, ¶ 44). In their opposition

6

memorandum, Plaintiffs state more specifically that they have a recognized property interest in their business goodwill, and that Mr. Johnson's statements linking Plaintiffs' properties to crime "erode[d] Plaintiffs' goodwill and wrongly impose[d] a stigma." (Paper 12, ¶ 19).

To prevail on a claim pursuant to § 1983, a plaintiff must allege that (1) the defendant "deprived him of a right secured by the Constitution of the United States" and (2) "any such deprivation was achieved under color of state law." *Paul v. Davis*, 424 U.S. 693, 696-97 (1976)(footnote omitted). There is no dispute that Defendants' actions constituted state action.

State-law defamation, standing alone, does not deprive a plaintiff of "liberty" or "property" "sufficient to invoke the procedural protection of the Due Process Clause." *Paul*, 424 U.S. at 701. To state a due process claim, a plaintiff must also allege that, in addition to the defamatory statement, a right or status was altered or extinguished. Such § 1983 claims commonly are referred to as a "stigma plus" claim. *Velez v. Levy*, 401 F.3d 75, 87 (2nd Cir. 2005). The Court has recognized, *iter alia*, the right to operate a vehicle where the state issues drivers' licenses, or a parolee's right to remain at liberty as long as the parolee does not violate the terms of his or her parole, *Paul,* 424 U.S. at 710-11, and loss of government employment, *id*. at 701, as sufficient to invoke the Due Process Clause.

The Second Circuit has identified the following test for a stigma-plus claim:

> [A] plaintiff must show (1) the utterance of a statement "sufficiently derogatory to injure his or her reputation, that is capable of being proved false," and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights . . . The state-imposed burden or alteration of status must be "*in addition to* the stigmatizing statement."

*Sadallah v. City of Utica*, 383 F.3d 34, 38 (2nd Cir. 2004)(internal citations omitted)(emphasis in original).

Plaintiffs allege that Defendants' statements deprived Plaintiffs of their goodwill and that Maryland law recognizes goodwill as a property interest. To have a property interest protected by due process, a person "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Property interests "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id*.

In asserting that Maryland law recognizes a property interest in goodwill, Plaintiffs cite *Skrabak v. Skrabak*, 108 Md.App. 633, 641-42 (1996) ("This Court has held that goodwill is a legally protected property right . . .") and *Schill v. Remington Putnam Book Co.*, 179 Md. 83, 90 (1942) ("[G]ood will is property in a very

real sense . . ."). Defendants dispute that Maryland law recognizes a business's goodwill as a property interest for purposes of the Due Process Clause. They cite to a Maryland eminent domain statute that expressly states that a business's goodwill is not compensable in an eminent domain proceeding. *See* Md. Code, Real Prop. Art., § 12-112(a)(2004) (stating that in an eminent domain proceeding, allowance for removing personal property "does not include any compensation for loss of profit, goodwill, or for the acquisition of another location").

Neither argument is directly relevant because each involves goodwill in a context other than a § 1983 stigma-plus claim. The court need not decide, however, whether Maryland law recognizes goodwill for purposes of a § 1983 claim because even if Plaintiffs prevailed on this point, Plaintiffs' claim does not allege that Plaintiffs' reputations were harmed as a result of a defamatory statement *plus* they suffered an additional injury (i.e. the loss of a government-issued license). In other words, loss of goodwill is a result of the defamation and not an additional injury. Plaintiffs also cannot show that Defendants' actions directly caused their loss of goodwill.

In *Sadallah v. City of Utica*, 383 F.3d 34, 39 (2nd Cir. 2004), the Second Circuit held that the loss of goodwill is not a state-imposed burden or alteration that is "in addition to the stigmatizing statement." The court explained:

> "[D]eleterious effects [flowing] directly from a sullied reputation," standing alone, do not constitute a "plus" under the "stigma plus" doctrine. *Valmonte v. Bane*, 18 F.3d 992, 1001 (2nd Cir. 1994).
> With these guidelines in mind, we find that plaintiffs' complaint fails to allege a claim under federal law. Even assuming, *arguendo*, that defendants' public statements about plaintiffs amounted to defamation, plaintiffs have failed to allege the additional state-imposed burden necessary for invoking the "stigma plus" doctrine. In their brief, plaintiffs allege that defendants' acts have caused them "damage not only to their business reputation, but [also the deprivation] of the good will in their business," and that this "has served to discourage customers from availing themselves of the Plaintiffs' facility." These harms, however, are not "in addition to" the alleged direct "deleterious effects" of that defamation, *Valmonte*, 18 F.3d at 1001. Absent an additional "deprivation of a legal right or status," *Abramson v. Pataki*, 278 F.3d 93, 101, 103 (2nd Cir. 2002), such as the revocation of [plaintiffs'] lease, plaintiffs have not alleged a "plus" sufficient to sustain a "stigma plus" claim.

*Id.* at 38-39.

The Ninth Circuit reached the same conclusion in *WMX Technologies, Inc. v. Miller*, 197 F.3d 367 (9th Cir. 1999) (en banc). The plaintiff filed a § 1983 stigma-plus claim after the district attorney's office stated in a report that the plaintiff had connections with organized crime. The plaintiff claimed the acts of the district attorney damaged the plaintiff's reputation and deprived it of its business goodwill. The Ninth Circuit held that the loss of goodwill was insufficient to state a stigma-plus

10

claim because there was no additional injury. *Id*. at 376. *See also Cypress Ins. Co. v. Clark*, 144 F.3d 1435, 1438 (11th Cir. 1998) (finding that a state official's alleged defamatory statements, which resulted in the loss of a significant business relationship, did not give rise to a § 1983 stigma-plus claim where there was no other government action); *Sullivan v. State of N.J., Div. Of Gaming Enforcement*, 602 F.Supp. 1216, 1223 (D.N.J. 1985) (stating that "[i]f plaintiff only has to show that the state defamed him – and not that the state did something else as well – in order to state a claim for deprivation of liberty under § 1983, the effect would be to transmute all defamation actions against state actors in which plaintiff can show some harm resulting from the defamation into § 1983 actions.").

Plaintiffs allege that Defendants made statements that injured their reputations and the statements are capable of being proven false. Their argument that they can satisfy the second part of the test (i.e., a state-imposed burden or state-imposed alteration of the plaintiff's status or rights in addition to the stigmatizing statement) is not clear, in part because Plaintiffs have not been consistent in their papers. In their complaint, Plaintiffs allege:

> In addition to publicizing and publishing those false statements . . . Defendants took actions which further harmed Plaintiffs' protected liberty interests. Those actions, include, but are not limited to placing Plaintiffs' names on the Apartment Action List, displaying graphics which falsely imply that Plaintiffs' properties are high-crime

11

> areas or are responsible for enabling criminal activity in Prince George's County, Maryland and other actions which will become apparent through discovery. Those actions clearly restricted Plaintiffs' protected liberty interests by depriving them of property and the value of their property and in other ways, without due process of law.

*Id*. at ¶ 47. These additional actions – placing Plaintiffs' names on the list and displaying graphics that imply that Plaintiffs' properties are high-crime areas – are essentially instances of potentially defamatory statements, but they are not state-imposed burdens.

Plaintiffs also allege in their complaint that "[b]y making said statements and undertaking the actions described herein . . . Defendants deprived Plaintiffs' [sic] of a protected liberty interest without due process of law" and as a result, "Plaintiffs were damaged and will continue to be damaged by reason of potential reduction of lessee [sic], reduced value of their property, impairment of their relationships with their creditors and other damages to be proved at trial." (Paper 1, ¶ 48). In their opposition to Defendants' motion to dismiss, Plaintiffs argue more specifically that the damage to a business's goodwill "may constitute an actionable 'plus' in the 'stigma-plus test" (paper 12, ¶ 17), and that:

> By falsely asserting that Plaintiffs are harboring criminals on their property, breeding criminal activity, responsible for increased crime activity throughout the community or otherwise permitting violent

12

>    crime to germinate from and on their
>    properties undercuts every goodwill effort
>    made by the Plaintiff[s] to establish their
>    business[es] in the community as safe and
>    attractive haven for families.

*Id.* at ¶ 18. This court agrees with the *Sadallah* court that loss of goodwill flows from the defamation, and is not an additional injury, for purposes of § 1983 stigma-plus claim.[4]

Plaintiffs also do not allege sufficient facts to show that any additional injury they suffered was the direct result of actions taken by Defendants, or as Defendants express this point, "[T]here is no state action to support the latter prong of the test." (Paper 13, at 9). Plaintiffs assert that as a result of Defendants' allegedly defamatory statements, "Plaintiffs were

---

[4] One of the few courts that has recognized a § 1983 claim based on the loss of goodwill is *Marrero v. City of Hialeah*, 625 F.2d 499, 515 (5th Cir. 1980) (recognizing a § 1983 stigma-plus claim where the plaintiffs alleged that the defamatory statement of city officials damaged their business's goodwill). That decision has been criticized. *See, e.g., Pelullo v. Patterson*, 788 F.Supp. 234, 240 (D.N.J. 1992); *Sullivan*, 602 F.Supp. at 1222. Moreover, later opinions from the Fifth Circuit and the Eleventh Circuit qualify *Marrero* by suggesting that the loss of goodwill in that case was actionable because the allegedly defamatory statements were coupled with an illegal search and seizure of items from the plaintiffs' jewelry store. *See Brown v. Manning*, No. 00-10096, 2000 WL 1901418, 2 (5th Cir. Dec. 6, 2000)("[S]ince the defamation allegedly occurred in concert with the illegal search and seizure, we found the stigma-plus infringement test was satisfied); *Cypress,* 144 F.3d at 1437 ("In *Marrero*, however, the state not only defamed the plaintiff's business, but also deprived the plaintiff of more tangible property interests: the Hialeah Police Department illegally seized most of the plaintiff's inventory in violation of the Fourth Amendment."). Here, there is no allegation that the Defendants' actions were coupled with an illegal search and seizure, and therefore *Marrero* does not support Plaintiffs' position.

13

damaged and will continue to be damaged by reason of potential reduction of lessee [sic], reduced value of their property, impairment of their relationships with their creditors and other damages to be proved at trial." (Paper 1, at ¶ 48). Plaintiffs do not allege that Defendants took direct action to harm Plaintiffs' leases, property values, or creditor relationships, thus, any injury to Plaintiffs' leases, property values, or creditor relationships appears to be the result of actions taken by third parties who acted upon Defendants' statements.

In *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1313 (9th Cir. 1989), cited by Plaintiffs, the state defendants not only made defamatory statements about the plaintiffs, but also sent letters to the plaintiffs' customers informing the customers that their permits might be suspended if they continued to do business with the plaintiffs. *See also WMX Techs.*, 80 F.3d at 1320 (holding that "the 'stigma-plus' test requires that the defamation be accompanied by an injury directly caused by the Government, rather than an injury caused by the act of some third party"); *Dower v. Dickinson*, 700 F.Supp. 640, 647 (N.D.N.Y. 1988) (following the rule that the additional injury must be "directly caused by the government as opposed to an injury caused by the acts of some third party acting upon the public official's defamatory remarks"); *Sullivan*, 602 F.Supp. at 1220 ("Section 1983 looks to *personal action* in the deprivation of constitutional rights, rather than damage alleged by a chain of various responsibility." (emphasis in original)). Here, Plaintiffs allege no facts that would indicate that Defendants

14

directly interfered with Plaintiffs' leases, property values, or creditor relationships.  For these reasons, Plaintiffs have failed to state a § 1983 stigma-plus claim.

**IV. Counts 2 and 3: Intentional Interference with Business Relations and Breach of Contract**

Counts 2 and 3 purport to state common law claims under Maryland law, for intentional interference with business relations and breach of contact.  Plaintiffs do not argue that these counts involve a federal question.  Plaintiffs assert generally that this court has jurisdiction pursuant to 28 U.S.C. § 1332 (paper 1, ¶ 1), although the facts alleged by Plaintiffs state that all three Plaintiffs are Maryland general partnerships, and both Defendants are citizens of the state of Maryland.  Consequently, the court lacks jurisdiction over Counts 2 and 3 based on § 1332.

The court has discretion, pursuant to  28 U.S.C. § 1367(c)(3), to decline to exercise supplemental jurisdiction over state law claims if the court "has dismissed all claims over which it has original jurisdiction . . . ." *Bigg Wolf Discount Video Movie Sales, Inc. v. Montgomery County*, 256 F.Supp.2d 385, 400-01 (D.Md. 2003).  In *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966), the Supreme Court cautioned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."  The *Gibbs* Court went on to say that "if the federal claims are dismissed before trial . . .  the state claims should be dismissed as well." *Id.; see also Hinson v.*

*Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001). ("[W]e conclude that under the authority of 28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has inherent power to dismiss the case . . . provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met.").

Because the court will dismiss Count 1, the only claim over which it has original jurisdiction, and Count 4 as discussed below, the court will decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to § 1367(c)(3). Accordingly, Plaintiffs' state law claims will be dismissed without prejudice.

**V.  Count 4: Request for a Declaratory Judgment and Injunctive Relief**

In Count 4, Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201 and an injunction pursuant to Fed.R.Civ.P. 65. They do not cite to any other basis for the court's jurisdiction. With respect to the declaratory judgment, the Fourth Circuit has stated:

> The Federal Declaratory Judgment Act . . . authorizes a federal court to give a declaratory judgment only with respect to "a case of actual controversy *within its jurisdiction*." (emphasis added).  It is axiomatic that the Act does not supply its own jurisdictional base, and where jurisdiction is lacking, declaratory relief should be denied. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); 6A Moore's Federal Practice ¶ 57.23 (1974).

16

*Delavigne v. Delavigne*, 530 F.2d 598, 601 (4th Cir. 1976). Neither the Declaratory Judgment Act nor Rule 65 provide a basis for an independent claim. Rather, they are available forms of relief, should the court otherwise have a valid cause of action before it. As described by one court:

> [I]t is well-settled that the Declaratory Judgment Act does not independently create jurisdiction. *Staacke v. U.S. Sec'y of Labor*, 841 F.2d 278, 280 (9th Cir. 1988). When a plaintiff has a legal claim under federal law, the Declaratory Judgment Act allows him to obtain a federal court declaration of his rights under that federal statute. *See C & E Serv., Inc. v. District of Columbia Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C.Cir. 2002) (availability of declaratory relief presupposes the existence of a judicially remediable right). But, absent that independent legal right, the Declaratory Judgment Act does not confer jurisdiction.

*Gem County Mosquito Abatement Dist. v. E.P.A.*, 398 F.Supp.2d 1, 12 (D.D.C. 2005). Similarly, Fed.R.Civ.P. 65 does not confer jurisdiction on this court, absent an independent basis for subject matter jurisdiction. 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 2941 (2nd ed. 1995)("In keeping with its procedural function, Rule 65 does not confer either subject-matter or personal jurisdiction on the court. As is true of civil actions generally, an independent basis for asserting federal question or diversity jurisdiction must be shown . . . The rule assumes that the district court already has acquired jurisdiction and that venue is proper.").

Because the court has held that Plaintiffs failed to state a § 1983 claim in Count 1, and will decline to exercise supplemental

jurisdiction over the state law claims in Counts 2 and 3, the court will also dismiss Plaintiffs' request for a declaratory judgment and for injunctive relief in Count 4.

## VI. Conclusion

For the foregoing reasons, the court will grant Defendants' motion to dismiss.  A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge